[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE, CORRECT AND/OR MODIFY ARBITRATION AWARD AND APPLICATION TO CONFIRM
Carabetta Builders, Inc. (Carabetta) has filed an application to vacate, correct and/or modify an arbitration award entered in favor of Hotz corporation (Hotz); Hotz has filed an application to confirm the same award.
Carabetta's application to vacate, correct and/or modify the arbitration award is D.N. 31-89-36. Hotz's application to confirm the same arbitration award is D.N. 31-83-94. While there is no indication in either file that these cases have been consolidated, for purposes of this Memorandum of Decision, Carabetta will be referred to as the plaintiff and Hotz, as the defendant.
It is undisputed that on or about November 10, 1988, these two Connecticut corporations, entered into a written subcontract which called for the defendant Hotz to fabricate and supply steel and various other components for a high-rise building which was being erected in Asbury Park, New Jersey, by plaintiff Carabetta for a third party. (Ocean Mile development Group, a New Jersey limited partnership). When a dispute arose between the parties regarding the performance of the contract, both parties submitted claims in accordance with the arbitration provisions of the subcontract.
Defendant Hotz filed an arbitration claim seeking money damages for alleged breach of the subcontract by Carabetta alleging that Carabetta failed to timely tender payments to Hotz pursuant to the terms of the subcontract. CT Page 10097
Plaintiff Carabetta counterclaimed seeking money damages against Hotz for alleged breach of the subcontract in that, among other claims Hotz failed to comply with provisions of the subcontract which required it to calculate a lump sum contract price within twenty days of receipt of the final revised structural drawings; and, 2) Hotz failed to fabricate sufficient materials to start action of the first four levels of the building by late January, 1989 to February 8, 1989.
On May 30, 1991, after twenty-three days of hearings on this matter, arbitrator William A. Bayer, entered an award in favor of Hotz for $2,470,701, including interest through June 1, 1991. The arbitrator denied Carabetta's counterclaim against Hotz.
I. The first issue is whether General Statutes 52-417
through 52-419 or the Federal Arbitration Act (FAA).is controlling.
Hotz argues that the arbitration proceeding before this court shall be in accordance with Connecticut law because "the parties agreed in the arbitration clause at issue that `[t]he arbitration proceeding shall be in accordance with Connecticut law,' and because Connecticut law is consistent with the federal policy favoring arbitration" . . . . Defendant Carabetta contends that the Federal Arbitration Act, 9 U.S.C.A. 1 et seq. is controlling in this arbitration because interstate commerce is involved and because the Supremacy Clause requires state law to yield to federal law.
The subcontract at issue, which contains the parties' agreement to arbitrate, reads as follows:
ARTICLE 13 ARBITRATION
 13.1 All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration, which shall be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to disputes between the Owner and the Contractor, except that a decision by the Architect shall not be a condition precedent to arbitration . . . .
ARTICLE 15 MISCELLANEOUS PROVISIONS CT Page 10098
 15.2 The Contract Documents, which constitute the entire Agreement between the Owner and the Contractor, are listed in Article 1, and the documents which are applicable to this Subcontract, except for Addenda and Modifications issued after execution of this Subcontract, are enumerated [in Schedule A].
 SCHEDULE A TO CONTRACT DATED NOVEMBER 10, 1988 BETWEEN CARABETTA BUILDERS, INC. AND HOTZ CORPORATION
ARTICLE 15.2
 (5) Any dispute arising under this agreement shall be submitted (by the action of either party or both parties) to arbitration under the rules of the American Arbitration Association. If the parties fail to agree upon the selection of a single arbitrator, then the selection of a single arbitrator will be made as promptly as possible by the American Arbitration Association in accordance with its procedures for such selection. The arbitration proceeding shall take place in Meriden, CT. The determination by the arbitration shall be filed and binding on the parties and may be enforced by any court of competent jurisdiction. The arbitration proceeding shall be in accordance with Connecticut law. (Emphasis supplied).
In Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468,109 S.Ct. 1248 (1989), the United States Supreme Court held that the FAA did not preempt California law where the parties' arbitration agreement contained a choice of law clause which provided that the contract would be governed by the law of "the place where the project is located" even though the contract involved interstate commerce. The primary basis for the court's holding was that "[t]he FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt, supra, 1254.
In finding that the FAA did not preempt state law where the parties have agreed to abide by state arbitration rules, the Volt court found that: 9 U.S.C.A. 4 of the FAA "does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that `arbitration proceed in the manner provided for in [the parties'] agreement.'" Volt, supra. (Emphasis supplied). The court reasoned that the purpose of the FAA is "not [to] mandate the CT Page 10099 arbitration of all claims, . . . but merely to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt, supra, 1255. The court in Volt further held that:
 Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, . . . so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to `rigorously enforce' such agreements according to their terms, . . . we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA. Volt, supra, 1255-6 (emphasis supplied).
Pursuant to the parties' agreement to arbitrate all disputes arising out of the subcontract, the choice-of-law clause provided that "[t]he arbitration proceeding shall be in accordance with Connecticut law". Accordingly, the U.S. Supreme Court decision in Volt dictates that the FAA does not preempt this state's arbitration rules in that the parties have agreed to abide by Connecticut law to the exclusion of federal arbitration law, even though interstate commerce may be involved.
Carabetta further argues that the subject matter of the instant arbitration proceedings is identical to the subject matter of an action pending in the Superior Court of New Jersey, Law Division, Monmouth County. (Carter Steel and Fabricating Company, plaintiff, vs. Hotz Corporation, Carabetta Builders, Inc., Carabetta Enterprises, Inc., Joseph Carabetta, et als., defendants, Docket No. L-56804-89). (In the New Jersey action, Carabetta cross-claimed against Hotz. Thereafter, Hotz filed a motion to have the New Jersey proceeding dismissed or stayed pending the outcome of the arbitration proceeding in Connecticut). Carabetta has CT Page 10100 attached to its memorandum, as Exhibit A, Hotz's brief filed with the Superior Court of New Jersey in support of its motion to have the action dismissed or stayed pending the outcome of an arbitration proceeding. Carabetta claims that Hotz has argued Connecticut law with respect to the issues regarding the instant action but, in contrast, in the pending New Jersey proceedings, Hotz claimed that the Federal Arbitration Act (FAA) and New Jersey law applied. In other words, Carabetta claims that Hotz cannot take both positions: that the FAA is not applicable in the New Jersey proceeding. Carabetta further claims that the position taken by Hotz during the New Jersey proceeding constitutes a "judicial admission." Accordingly, Carabetta submits that the FAA is applicable to this action because it involves interstate commerce and also because of the "judicial admission" by Hotz in the New Jersey proceeding.
In response to Carabetta, Hotz argues that the issue of choice of law addressed in the present arbitration proceeding was not at issue in the New Jersey proceeding. Specifically, Hotz argues that the issue in the New Jersey action was whether the issues raised by Carabetta in its crossclaim against Hotz were arbitrable. Hotz maintains that "[w]hen deciding choice of law issues for contracts involving interstate commerce, the [FAA] mandates the application of state law when the parties have agreed in their contract to arbitrate in accordance with state law. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stamford Junior University, 489 U.S. 468, 109 S.Ct. 1248 (1989)." Additionally, Hotz refutes Carabetta's argument that Hotz's reference to the FAA in the New Jersey action constitutes a "judicial admission" that would preclude the application of Connecticut law in the present matter.
 A judicial admission is `"[a]n express waiver, made in court or preparatory to trial, by the party or his attorney concerning for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it . . ."
Futterleib v. Mr. Happy's, Inc., 16 Conn. App. 497, 504,548 A.2d 728 (1988).
The threshold issue in this action is whether Connecticut law pursuant to 52-417 through 52-419 or the FAA controls. In contrast, the issues in the New Jersey proceeding were whether the underlying transaction was arbitrable and CT Page 10101 whether the FAA mandates a stay during the arbitration. Hotz merely referred to New Jersey law to support its argument that the underlying transaction is arbitrable. (See p. 4-8 of Exhibit A). Under Connecticut/New Jersey and Federal law, actions brought in court involving claims that are properly the subject of arbitration shall be stayed pending the outcome of arbitration. General Statutes 52-409, N.J. Stat. Ann. 24:22-4; Federal Arbitration Act, 9 U.S.C.A. 3 (1989).
Accordingly, the court concludes that Hotz's reference to the FAA and New Jersey state law in the New Jersey proceeding is not a "judicial admission" that Connecticut law is not applicable to the present arbitration proceeding that is before this court.
II. The second issue is whether the court should confirm the arbitration award in favor of Hotz or vacate, correct and/or modify such arbitration award.
"Arbitration is the voluntary submission by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination." Gary Excavating, Inc. v. Town of North Haven, 164 Conn. 119,121, 318 A.2d 84 (1972). (Connecticut arbitration legislation is embodied in Connecticut Statutes 52-408 through52-424.) Consensual arbitration is a contractual remedy where the parties themselves, by the agreement of submission, define the powers of the arbitrator. Bio-Polymers, Inc. v. D'Arrigo, 23 Conn. App. 107, 110, 579 A.2d 122 (1990) citing Bic Pen Corporation v. Local No. 134, 183 Conn. 579, 583-84,440 A.2d 774 (1981).
 Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrator through their submission, then the scope of judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statute 52-418 . . . [A]ny challenge to an award on the ground that the arbitrator exceeded his powers is, therefore, properly limited to a comparison of the award with the submission.
American Universal Ins. Co. v. DelGreco, 205 Conn. 178185-186, 530 A.2d 171 (1987).
Where the submission lacks conditional or limiting language which restricts the arbitrator's authority by CT Page 10102 requiring that the arbitrator decide the issues according to law, the submission is termed "unrestricted." Trumbull v. Trumbull Police Local 1745, 1 Conn. App. 207, 212,470 A.2d 1219 (1984).
 Where the language of the arbitration clause indicates an intention on the part of the parties to include all controversies which may arise under their agreement, and where the record reveals no specific questions which the parties submitted to the arbitrator, the submission will be construed as unrestricted.
Carroll v. Aetna Casualty and Surety Co., 189 Conn. 16, 20,453 A.2d 1158 (1983).
In agreeing to an unrestricted submission, the parties authorize the arbitrator "to use [its] own judgment and discretion and to render an appropriate award." (Citation omitted). Hartford v. IAFF, Local 760, AFL-CIO, CLC, 24 Conn. App. 254,258, 587 A.2d 435 (1991).
 [A]n unrestricted submission empower[s] the arbitrator to decide all the factual and legal questions presented by the parties. (citation omitted). Every reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. (citation omitted). An award will not be vacated on the ground that the construction placed on the facts or the interpretation of the agreement by the arbitrator was erroneous. (citation omitted).
Cashman v. Sullivan and Donegan, 23 Conn. App. 24, 27,578 A.2d 167 (1990).
"The party challenging an arbitration award, therefore, bears the burden of demonstrating that the award violates the parties' agreement (Citation omitted). Hartford v. IAFF, Local 760, AFL-CIOm CLC, supra, 256-57.
"If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact . . . . Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrator[s], their award conforms to the CT Page 10103 submission." (Citations omitted). New Haven v. AFSCME, Council 15, Local 530, 208 Conn. 411, 415-16, 544 A.2d 186
(1988); see also General Statutes 52-418.
Connecticut public policy is strong in favoring arbitration and, absent any fraud or statutory prohibition, the courts will uphold the arbitrator's decision as final. Hartford v. American Arbitration Association, 174 Conn. 472,480, 391 A.2d 137 (1978); see also AFSCME v. New Britain,206 Conn. 465, 469, 538 A.2d 1022 (1988) (courts favor arbitration to settle differences); John A. Errichetti Associates v. Boutin, 183 Conn. 481, 488, 439 A.2d 416 (1981) (arbitration favored by the law); Middletown v. Police Local, No. 1361, 187 Conn. 228, 230, 445 A.2d 322 (1982) (autonomy of arbitration requires minimum of judicial intrusion), Fishman v. Middlesex Mutual Assurance Co., 4 Conn. App. 339, 356,494 A.2d 606 (1985) (strong legislative and judicial policy favoring arbitration).
As long as the arbitrator renders an award in conformity to the submission, "an award need contain no more than the actual decision of the arbitrators. An explanation of the means by which they reached the award, unless required by the submission, is needless and superfluous." Malecki v. Burnham, 181 Conn. 211, 213, 435 A.2d 13 (1980); Ramos Iron Works, Inc. v. Franklin Construction Co., 174 Conn. 583,589, 392 A.2d 461 (1978). Matters outside the submission may not be included in the award. Board of Education v. AFSCME, 195 Conn. 266, 272, 487 A.2d 553 (1985).
In their subcontract, Carabetta and Hotz agreed to arbitrate "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof . . . ." See subcontract dated November 10, 1988, Article 13 13.1. Further, Schedule A to contract dated November 10, 1998, Article 15.2(5), states in pertinent part that "[A]ny dispute arising under this agreement shall be submitted [by the action of either party, or both parties] to arbitration . . . ." On March 20, 1990, Hotz addressed to Carabetta and filed with the American Arbitration Association, an "AAA Construction Industry Arbitration Rules Demand for Arbitration."
The demand contained the following recitation:
 Nature of Dispute: Non-payment of sums due the Claimant, Hotz Corporation (Hotz) under a subcontract with the Respondent, Carabetta Builders, Inc. (Carabetta), including all sums due Hotz for extra and CT Page 10104 additional work, and damages incurred as a result of the acts and/or omissions of Carabetta.
 Claim or Relief Sought: (amount, if any) A determination of all sums due Hotz, including, but not limited to, past due progress payments, subcontract balance due, compensation for extra and additional work, interest, losses incurred as a result of Carabetta's failure to pay Hotz and loss of use of money on the aforedescribed sums, as well as reimbursement its attorneys' fees and the costs of this arbitration.
On April 26, 1990, Carabetta filed with the American Arbitration Association an answer and counterclaim. In its answer, Carabetta "denie[d] all of [Hotz's] claims as set forth in its Demand for Arbitration." The counterclaim recites that Carabetta seeks damages incurred "as a result, direct and/or proximate, of the acts and/or omissions of the claimant, Hotz Corporation, relating to the claimant's breach of its subcontract with the Respondent . . . ." Carabetta's counterclaim thereafter lists a nonexhaustive list of specific damages resulting from Hotz's alleged breach of contract.
On May 30, 1991, the arbitrator rendered the following award in favor of Hotz:
 On the claim of Hotz Corporation, (hereafter known as Claimant), against Carabetta Builders, Inc., (hereinafter known as Respondent), I award Hotz Corporation the sum of $2,470,701.00 including interest through June 1, 1991, to be paid by Carabetta Builders, Inc. On the counterclaim of Carabetta Builders, Inc., against Hotz Corporation, I find the counterclaim denied. The administrative fees and expenses of the American Arbitration Association totaling $23,176.93 shall be borne equally by the parties, with the exception of $162.31 which is to be borne solely by Respondent and the compensation of the arbitrator(s) totaling $12,639.80 shall be borne equally by the parties, with the exception of $450.00 which is to be borne solely by the Respondent. Therefore, CT Page 10105 Respondent shall pay to Claimant the sum of $507.29 and Respondent shall pay to the American Arbitration Association the sum of $1614.81.
 This award is in full and final settlement of any and all claims submitted to this Arbitration.
Carabetta now seeks to vacate, correct and/or modify the award pursuant to General Statutes 52-418 (a) on the alternative grounds that: 1) there has been evident partiality on the part of the arbitrator as indicated by the evidence; 2) the award is the result of undue means and was rendered In a manner violative of plaintiff's [Carabetta's] right to due process in that the evidence is overwhelmingly in Carabetta's favor; 3) the arbitrator so imperfectly executed his powers that the award rendered cannot, as a matter of law, be considered mutual, final, definite or binding; 4) the arbitrator In finding for Hotz has acted in a manner by which the rights of plaintiff [Carabetta] have been unjustly and unduly prejudiced.
The parties voluntarily agreed to an "unrestricted" submission to arbitrate and have set forth the powers of the arbitrator in their submission. Therefore, the standard of judicial review of the award is limited by the parties' agreement and by the provisions of the arbitration statutes. American Universal Ins. Co. v. DelGreco, 205 Conn. 178,530 A.2d 171 (1987).
Carabetta has not pointed to any improper conduct by the arbitrator. Instead, Carabetta's allegations in its application focus on the weight of the evidence presented to the arbitrator, which is not a proper subject of review on an unrestricted submission.
The court further concludes that the arbitrator was not required to include in the award any specific reference to Hotz's particular claims or to provide any explanation of its award. Thus, the lump sum award, which recited that it was "in full settlement of any and all claims submitted to this arbitration" was a definite award and in conformity with the parties' submission. See Ramos Iron Works, supra, 591. Carabetta, which has the burden of proof to produce evidence sufficient to invalidate or avoid the award, has failed to produce such evidence. Accordingly, the court denies Carabetta's application to vacate, correct, and/or modify the award, and thereupon confirms the award in favor of Hotz. Statutory interest is awarded to the plaintiff from CT Page 10106 June 1, 1991.
SCHALLER, J.