[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 13693
File CV95-0250411S is plaintiff David Yeager's motion to vacate an arbitration award dated September 11, 1995, awarding defendant Computer Innovations a total of $40,852.78 together with per diem interest thereafter of $13.34 through the date of payment of the award.
Also before the court is file 0250842S which is an application by plaintiff Computer Innovations to confirm this award. These files were consolidated to permit the court to hear the motion to vacate and the application to confirm simultaneously.
The award dated September 11, 1995 was signed by two of the three arbitrators who heard the case, Robert C. DuBeau and James Green. The third arbitrator, Richard F. Banbury, filed a separate opinion dated September 14, 1995. The exhibits attached to plaintiff David Yeager's memorandum contain the oath and disclosure of arbitrators Robert C. DuBeau and Richard F. Banbury, but not of the third arbitrator, James Green.
Counsel were heard in oral argument on November 30, 1995. All of the material included as exhibits with their memoranda was submitted to the court.
Plaintiff's motion to vacate asserts that:
1. On or about March 31, 1992, the plaintiff, David L. Yeager, M.D., P.C. and defendant entered into a written agreement for medical billing services, a copy of which is annexed marked Exhibit A.
2. On July 26, 1994, the plaintiffs and defendant entered into a written agreement for arbitration, a copy of which is annexed marked Exhibit B.
3. On December 19, 1994, the plaintiffs demanded arbitration pursuant to a certain "Demand for Arbitration", a copy of which is annexed marked Exhibit C.
4. On January 11, 1995, the defendant filed a "Counterclaim for Arbitration", a copy of which is annexed marked Exhibit D. CT Page 13694
5. On May 2, 1995, the arbitration panel commenced hearings.
6. On May 3, 1995, the parties agreed to arbitrate all issues and disputes arising out of their relationship, including damages, attorneys fees, punitive damages and interest in accordance with their demands for arbitration as set forth in Exhibit E.
7. On September 11, 1995, the arbitrators made an "Award" and one of the arbitrators filed a "Separate Opinion", a copy of which is annexed marked Exhibit F.
8. On September 14, 1995, the defendant was duly notified of the award and separate opinion.
9. The award is defective and in violation of 52-418 (a) in one or more of the following ways:
a. The arbitrators did not reach a "mutual" decision.
 b. The award is contrary to the "contract and law" as demanded by both parties.
 c. The award to the respondent of damages and interest "in accordance with the contract" is inconsistent with the finding that the respondent breached the contract.
 d. The finding that Dr. Yeager contributed to the defendant's breach by not providing blue cards is contrary to the evidence of the defendant's own employee.
 e. The award was procured by corruption, fraud or undue means.
 f. There was evident partiality or corruption on the part of one or more of the arbitrators.
 g. The rights of the claimants were prejudiced by the actions of one or more of the arbitrators.
 h. The arbitrators exceeded their powers or so imperfectly executed them that a mutual final and definite award was not made. CT Page 13695
 i. Arbitrator James Green held one or more discussions outside the hearing with opposing counsel concerning a former associate who had become a member of the arbitrator's firm and had discussions on other matters with opposing counsel outside the hearing.
10. Arbitrator James Green did not comply with 52-414 (d).
In his memorandum in support of plaintiff's motion to vacate, the plaintiff argues that § 52-418 requires that the award shall be vacated if the court finds any of the following defects:
(1) If the award had been procured by corruption, fraud or undue means;
(2) If there had been evident partiality or corruption on the part of any arbitrators;
(4) If the arbitrators had exceeded their powers or so imperfectly executed them that a mutual final and definite award upon the subject matter submitted was not made.
The plaintiff notes that on September 11, 1995 and September 12, 1995, two of the three arbitrators signed an award. On September 14, 1995, the chairman of the panel signed a separate opinion awarding the plaintiff an additional $66,000 for reasonable and necessary expenses associated with violation of the implied covenant of good faith and fair dealings which underpin their contractual relationships.
The plaintiff's memorandum contains four arguments in support of its motion to vacate.
1. The award was not mutual.
2. Arbitrator James Green did not comply with § 52-414(d).
3. Arbitrator James Green did not disclose any past or present relationship with the parties or their counsel direct or indirect whether financial, professional, social or of any other kind in accordance with Rule 19 (of the American Arbitration Association Rules).
4. The award is contrary to the contract and the law as CT Page 13696 demanded by both parties.
Computer Innovations' motion to confirm the award takes a counter position on all of these four points.
Arbitration is a creature of contract and its autonomy requires a minimum of judicial intrusion. Bic Pen Corp. v. LocalNo. 134, 183 Conn. 579, 583. When the parties agree to a procedure and have delineated the authority of the arbitrator, they must adhere to and be bound by those limits. Id. 584.Trumbull v. Police Local 1745, 1 Conn. App. 207, 211-12 (1984). Every reasonable presumption and intendment is made in favor of sustaining the award and the arbitrator's act in proceedings.Bruno v. Department of Consumer Protection, 190 Conn. 14, 19
(1983). The burden therefore rests on the party challenging the award to produce evidence to support its claim of misconduct. BicPen Corp. v. Local No. 134, supra, 584. Absent a showing of perverse misconstruction or positive misconduct or a provision in the agreement authorizing it, the arbitrator's determination is not subject to judicial inquiry. Schwarzschild v. Martin,191 Conn. 316, 327 (1983).
The court's review of arbitration matters is limited to the sole issue of whether the award conforms to the submission, Brunov. Department of Consumer Protection, Id. 118. Bic Pen Corp. v. Local 134, Id. 584 (1981); Board of Education v. Local 818,5 Conn. App. 636, 639-40 (1985). The submission defines the scope of the entire arbitration proceedings by specifically delineating the issues to be decided, and no matter outside the submission may be included in the award. Board of Education v. AFSCME,
supra. Where the award does not conform to the submission, the arbitrator has exceeded his authority and the court may vacate the award upon proper application of either party. Where a submission is unrestricted, arbitrators are not required to decide according to law; Bridgeport v. Bridgeport Police Local1159, 183 Conn. 102, 106 (1981); United Electrical Radio andMachine Workers v. Union Manufacturing Co., 145 Conn. 285, 288
(1958), and the award cannot be reviewed for errors of law or fact. Carroll v. Aetna Casualty Surety Co., 189 Conn. 16, 23
(1983); Courchaine v. Shelby Mutual Insurance Company,2 Conn. App. 438 (1984).
The court finds as follows:
The agreement entered into on the nineteenth day of March CT Page 13697 1992 by and between Computer Innovations, Inc., a Connecticut corporation, and David L. Yeager, M.D., P.C., made no provision for arbitration, and when a dispute ensued between the parties, both parties filed suit in the Putnam Superior Court in the cases entitled David L. Yeager, M.D., David L. Yeager, M.D., P.C. v.Computer Innovations, Inc., bearing Docket No. 92-45203S andComputer Innovations, Inc. v. David L. Yeager, M.D., P.C.,
bearing Docket No. CV92-45468S.
Subsequently, on July 26, 1994, the parties agreed to arbitrate these claims in accordance with the rules of the American Arbitration Association. On December 19, 1994, David Yeager, M.D. filed a demand for arbitration with the American Arbitration Association asking that issues that may arise out of the relationship between said parties relative to the medical billing services provided by Computer Innovations to David L. Yeager, M.D. and seeking an arbitration award in the amount of $500,000 plus interest, punitive damages and attorney's fees asmay be allowed by contract and law.
On January 11, 1995, Computer Innovations, Inc. filed a counterclaim for arbitration with the American Arbitration Association again asking for an arbitration of any claims or counterclaims that may arise out of the relationship between the parties relative to the medical billing services provided by Computer Innovations, Inc. to David L. Yeager, M.D., P.C. Computer Innovations sought an award in arbitration for an amount which was then currently undetermined plus interest, punitive damages and attorney's fees as may be allowed by contract andlaw.
Prior to the commencement of the hearing, an oath was administered to the three arbitrators.
Shortly after the arbitrators commenced the hearing, both parties submitted an agreement to arbitrate to the arbitrators in which they agreed to arbitrate in the above-captioned arbitration proceedings any issue or dispute or potential issue or dispute arising from the relationship including damages, attorney's fees, costs, punitive damages and interest. The award signed by two of the arbitrators indicated, paragraph 3, that the submission of the parties in this matter is an unrestricted submission intended to resolve all claims arising out of the parties' relationship particularly with respect to an agreement executed on or about March 31, 1992, including breach of contract, tortious conduct CT Page 13698 and all common law remedies available under the circumstances of this matter to either party.
 I
The court concludes that the arbitrators did reach a mutual decision. Connecticut General Statutes § 52-416b provides that an arbitration award shall be in writing and signed by the arbitrator or arbitrators or a majority of them or by the umpire. The award in this case was in fact signed by two of the three arbitrators and is therefore valid and binding.
 II
The court concludes that Arbitrator James Green did comply with General Statutes § 52-414d.
General Statutes § 52-414d requires that arbitrators shall take a specific statutory oath. The arbitration record indicates that an oath was administered to the arbitrators although the record does not reveal the exact language of the oath. The file indicates that Arbitrator DuBeau and Arbitrator Banbury took the statutory oath about three months prior to the commencement of the hearing on January 26, 1995, and February 3, 1995, respectively. Plaintiff David L. Yeager has submitted an exhibit consisting of a letter from the American Arbitration Association dated September 25, 1995, which relates that the writer is "embarassed [sic] to say we cannot locate Mr. Green's oath . . . so we will continue to search for a misfiling." The court cannot presume from this record that Mr. Green did not submit a statutory oath form to the Association or did not take the statutory oath at the hearing.
 III
The issue of whether Arbitrator Green failed to comply with Rule 19 of the American Arbitration Association hinges both on unavailability of the form containing his Notice of Appointment and Arbitrator's Oath. As noted under II, the court cannot presume it does not exist because the Association office cannot locate it. The court will assume, however, that Mr. Green did check off the block indicating he had nothing to disclose.
Rule 19 is entitled Disclosure and Challenge Procedure. It states as follows: CT Page 13699
19. Disclosure and Challenge Procedure
 Any person appointed as neutral arbitrator shall disclose to the AAA any circumstances likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others. Upon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.
In his memorandum plaintiff David Yeager alleges that Arbitrator James Green has an indirect professional relationship with defendant Computer Innovations, Inc. counsel's law firm. He states that he learned of this relationship after the award in a conversation with defendant's counsel after the award. Defense counsel indicates in his memorandum that this indirect relationship revolves about his inquiry to Arbitrator Green about a member of Green's firm who formerly was a member of defense counsel's firm. Defense counsel categorically denies any relationship with Arbitrator Green whatsoever, professional or social, prior to the hearing.
The court does not consider it was obligatory under Rule 19 for Attorney Green to disclose prior to his acceptance of his appointment or after responding to social inquiries during the course of the hearing that a former member of defense counsel's firm was now a member of his firm. By no stretch of imagination does this circumstance constitute either a past or present relationship with the parties or their representatives barred by Rule 19.
The nature of the disqualification claimed before the court is not substantial. "The mere speculative statement of bias by a participant in the arbitration proceeding does not in and of itself justify a claim of disqualification. Otherwise a mere claim would automatically require disqualification." Local 530,AFSCME. Council 15 v. New Haven, 9 Conn. App. 260, 271 (1986). CT Page 13700
 IV
The award was not contrary to the contract and law as demanded by both parties. While it is true that both parties demanded arbitration by contract and law, it is also true that both parties signed an Agreement to Arbitrate "any issue or dispute or potential issue or dispute arising from their relationship including damages, attorney's fees, costs, punitive damages and interest. The court concludes that this submission subsumed and superseded the prior demands and concurs with the judgment of the majority of the arbitrators that this agreement or submission was unrestricted. As such the burden of demonstrating nonconformity between the award and the submission rests on plaintiff Yeager. The court concludes that plaintiff has not sustained this burden.
Accordingly, the motion to vacate is denied and the application to confirm Case 0250842 is granted.
Judgment may enter for the plaintiff on file 0250842 in the amount of $40,852.78, together with per diem interest thereafter of $13.34 through the date of payment of the award plus costs.
Dorsey, J. State Trial Referee